FILED
11/09/2022
Terry Halpin
CLERK
Yellowstone County District Court
STATE OF MONTANA
By: Ronda Duncan
DV-56-2022-0001143-WS
Knisely, Mary Jane
1.00

Mark D. Parker
**PARKER, HEITZ & COSGROVE, PLLC**
401 N. 31st Street, Suite 805
P.O. Box 7212
Billings, Montana 59103-7212
Ph: (406) 245-9991
Fax: (406) 245-0971
Email: markdparker@parker-law.com

*Attorneys for Plaintiff*

## MONTANA THIRTEENTH JUDICIAL DISTRICT COURT, YELLOWSTONE COUNTY

| | |
|---|---|
| TIM EVANS, | Cause No. DV-56-2022-0001143-WS |
| Plaintiff, | Mary Jane Knisely |
| vs. | **COMPLAINT AND JURY DEMAND** |
| NOVUS INTERNATIONAL, INC., | |
| Defendant. | |

COME NOW the Plaintiff, Tim Evans ("Evans") and for his Complaint against the Defendant, Novus International, Inc., ("Novus") states and alleges as follows:

### COUNT I – WRONGFUL TERMINATION FROM EMPLOYMENT

1. On November 17, 2022, Novus wrongfully terminated Evans from his employment with Novus after nearly sixteen (16) years of loyal and competent service. Novus did not a have a sufficient business reason to terminate Evans. Evans was damaged as a result.

## COUNT II – WRONGFUL TERMINATION FROM EMPLOYMENT

2. Novus wrongfully terminated Tim Evans by unilaterally terminating him in violation of a written employment policy wherein Novus agreed to submit such claims and issues to arbitration and wholly failed to submit the disagreement to arbitration. Evans was damaged as a result.

## COUNT III – UNLAWFUL RESTRAINT OF TRADE

3. Evans signed an employment agreement, a copy of which is attached hereto as Exhibit A. The agreement contains provisions which are in violation of Montana's Prohibition of Agreements in restraint of trade. *See* § 28-2-703, MCA.

4. From and after the wrongful termination, Evans made every effort to mitigate the damage of the wrongful termination by seeking employment in his chosen field. His efforts were largely stymied and made more difficult as a result of Novus' violation of Montana law, including § 30-14-205, MCA, and § 28-2-703, MCA. Evans was damaged as a result.

## COUNT IV – DECLARATORY JUDGMENT

5. Evans seeks a declaratory ruling that the prohibition against his re-employment in his Employment Agreement as unlawful.

In consideration of the foregoing, Evans prays for the following:

1. Money judgment in a reasonable amount;
2. A declaration that the provisions in the contract restraining Evans from lawful employment be declared as void; and
3. Attorney fees and costs.

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury on all issues.

**DATED** this _____ day of November, 2022.

_____
Mark D. Parker
PARKER, HEITZ & COSGROVE, PLLC
401 N. 31st Street, Suite 805
P.O. Box 7212
Billings, Montana 59103

# NOVUS

Novus International, Inc. 530 Maryville Centre Drive St. Louis, Mo 63141 (314) 576-8886

## EMPLOYMENT, CONFIDENTIALITY AND NONCOMPETE AGREEMENT

This Agreement is entered into, as of the date last written below, between Employee and NOVUS International, Inc. (the "Company").

### *1. Acknowledgements*

In entering into this Agreement, I understand and agree that:

(a) the Company is and will be engaged in a number of highly competitive lines of business, including but not limited to development, production and sales of agricultural feed supplements and agricultural production management systems and software;

(b) the Company conducts business throughout the United States and in numerous foreign countries;

(c) the Company's Confidential Information and customer goodwill provide the Company with a significant competitive advantage;

(d) the success of the Company depends to a substantial extent upon the protection of its Confidential Information and customer goodwill by all of its employees; and

(e) if I were to leave the Company, the Company would in all fairness need certain protection to prevent competitors from gaining an unfair competitive advantage over the Company.

Therefore, in consideration of the compensation and other benefits of my employment in any capacity by the Company, I agree to the terms contained herein.

### *2. Employment by the Company*

During the term of my employment with the Company I shall devote my working time and best efforts to the service of the Company and shall comply with the policies and procedures of the Company, including those relating to security and employee conduct, and I shall not engage in any activity in conflict with the business interests of the Company.

As used herein, "Company" means NOVUS International, Inc. or one of its Subsidiaries, whichever is my employer. The term "Subsidiary" means any corporation, joint venture or other business organization in which NOVUS International, Inc. now or hereafter, directly or indirectly, owns or controls more than fifty percent (50%) interest.

### *3. Confidential Information*

As used herein, "Confidential Information" means all technical and business information of the Company, whether patentable or not, which is of a confidential, trade secret and/or proprietary character and which is either developed by me (alone or with others) or to which I have had access during my employment with the Company (or if applicable, with Monsanto Company). "Confidential Information" includes, but is not limited to, confidential evaluations, the confidential use, non-use and compilation by the Company of technical or business information in the public domain, business and marketing plans, projections, sales data and reports, prices, margins, customers, customer requirements, suppliers, production processes, formulas, technology, research, protocols, methodologies and proprietary software.

EXHIBIT A

I shall use my best efforts and diligence both during and after my Company employment to protect the confidential, trade secret and/or proprietary character of all Confidential Information. I shall not, directly or indirectly, use (for myself or another) or disclose any Confidential Information for so long as it shall remain proprietary or under protection as confidential or trade secret information, except as may be required for the proper performance of my Company duties.

All Confidential Information and all copies of documents (whether in written, electronic or any other media or form) containing confidential information are and shall be deemed property of the Company.

During the term of my employment, I will not copy, reproduce or otherwise duplicate, record, abstract, summarize or otherwise use, any papers, records, reports, studies, computer printouts, equipment, tools or other property owned by the Company except as expressly permitted or required for the proper performance of my duties on behalf of the Company.

I shall deliver promptly to the Company, at the termination of my employment or at any other time at the Company's request, without retaining any copies, all documents and other material in my possession relating, directly or indirectly, to any Confidential Information.

Each of my obligations in this section shall also apply to the confidential, trade secret and proprietary information learned or acquired by me during my employment with the Company (or with Monsanto Company) from others with whom the Company (or Monsanto Company, as the case may be) has or had a business relationship.

***4. Competitive Activity***

Ishall not directly or indirectly (whether as owner, partner, consultant, employee or otherwise) at any time during the term of my employment and for the period of two years following the termination for any reason of my employment with the Company:

(a) engage in or contribute my knowledge to any work or activity that involves or assist or have an interest in, or enter the employment or act as an agent, advisor or consultant for, any person or entity which is engaged, or will be engaged, in the development, manufacture or sale of a product, process, apparatus, service or development which is competitive with a product, process, apparatus, service or development on which I worked or with respect to which I have or had access to Confidential Information while at the Company ("Competitive Work");

(b) solicit, call on, or in any manner cause or attempt to cause, any customer or prospective customer of the Company with whom I dealt, or on whose account I worked, or with respect to which I was provided or had access to Confidential Information, at any time during my employment, to divert, terminate, limit, modify or fail to enter into, any existing or potential relationship with the Company; and

(c) directly or indirectly, induce or attempt to induce a salaried employee or contracted consultant or advisor of the Company to accept employment or an affiliation involving Competitive Work with another firm or corporation of which I am an employee, owner, partner or consultant.

I understand that the post-employment restrictions contained herein are likely to preclude, for a time, my employment with such major competitors of the Company as Rhone-Poulenc and Degussa, as well as others. I also understand that the restrictions of this section are not limited geographically in view of the Company's nationwide and foreign operations but are limited instead by the nature of the Confidential Information and customers to which my employment provided access.

Nothing contained herein shall be understood to prohibit the ownership by me of an aggregate of not more than 5% of the total stock ownership of any corporation whose stock is traded on a national securities exchange or quoted on the National Association of Securities Dealers Automated Quotation system.

Following the expiration of the two-year period referred to above, I shall continue to be obligated under the "Confidential Information" section of this Agreement not to use or to disclose Confidential Information so long as it shall remain proprietary or under protection as confidential or trade secret information.

### 5. Ideas, Inventions or Discoveries

I shall promptly and fully disclose to the Company all ideas, inventions or discoveries, whether or not patentable, which I may conceive or make, alone or with others, during my employment, whether or not during working hours, and which directly or indirectly

   (a) relate to matters within the scope of my duties or field of responsibility during my employment by the Company (or my previous employment with Monsanto Company); or

   (b) are based on my knowledge of the actual or anticipated business or interests of the Company; or

   (c) are aided by the use of time, materials, facilities or information of the Company.

I hereby assign to the Company or its nominee, without further compensation, all of my right, title and interest in all such ideas, inventions or discoveries (collectively, "Discoveries") in all countries of the world and such Discoveries shall be and remain the sole and exclusive property of the Company or its nominee, whether or not patented or used by the Company. Consistent with the Company's policy on records retention, I agree to make and maintain adequate and current written records of all such Discoveries, in the form of notes, sketches, drawings or reports relating thereto, which records shall be and remain the property of and available to the Company at all times.

Without further compensation but at the Company's expense, I shall give all testimony and execute all patent applications, rights or priority, assignments and other documents and in general do all lawful things requested of me by the Company and its nominees to enable the Company to obtain, maintain, and enforce protection of such Discoveries for and in the name of the Company or its nominee, in all countries of the world. However, should I render any of these services following termination of my employment, I shall be compensated at a rate per hour equal to the effective hourly rate based on the basic salary I received from the Company at the time of termination and I shall be reimbursed for reasonable out-of-pocket expenses incurred in rendering the services.

I recognize that ideas, inventions or discoveries of the type described in this section above, conceived or made by me, alone or with others, within one year after termination of my employment are likely to have been conceived in significant part while employed by the Company. Accordingly, I agree that such ideas, inventions or discoveries shall be presumed to have been conceived during my Company employment unless and until I have established the contrary by clear and convincing evidence.

### 6. Right to Injunctive Relief

In the event of a breach or threatened breach of any of my duties and obligations under the terms of Sections 3, 4, or 5 of this Agreement, the Company shall be entitled, in addition to any other legal or equitable remedies (including any right to damages that the Company may suffer), to a temporary, preliminary and/or permanent injunction restraining such breach or threatened breach. I acknowledge that the harm which might result to the Company's business as a result of noncompliance with Sections 3, 4 and 5 is largely irreparable. I further agree that if there is a question as to the enforceability of Sections 3, 4 or 5, I will not engage in any conduct inconsistent with or contrary to any such Section until after the question has been resolved by a final judgment of a court of competent jurisdiction.

### 7. Severability of Covenants

I acknowledge and agree that the covenants in Sections 3, 4 and 5 of this Agreement are reasonable in duration and scope and necessary for the reasonable protection of the Company's Confidential Information and customer goodwill. Any term or provision of this Agreement which is invalid or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity or enforceability without rendering invalid or unenforceable the remaining terms and

provisions of this Agreement or affecting the validity or enforceability of any of the terms or provisions of this Agreement in any other jurisdiction. If any provision of this Agreement is so broad as to be unenforceable, the provision shall be interpreted to be only so broad as is enforceable.

I also acknowledge that if any of the covenants in Sections 3, 4 or 5 are unenforceable because of the duration or scope of a provision, such provision shall be appropriately reduced in duration or scope so that the provision becomes enforceable.

### 8. Assignment and Transfer

This Agreement shall not be affected by any change in the name of the Company or any consolidation, sale or merger involving the Company or any of its assets, and shall be automatically assigned to any successor corporation or entity of the Company and shall continue in effect thereafter in accordance with its terms.

If I am transferred from the company which was my employer at the time I signed this Agreement to the employment of another company that is a Subsidiary of NOVUS International, Inc. or is NOVUS International, Inc. itself, and I have not entered into a superseding agreement with my new employer covering the subject matter of this Agreement, then this Agreement shall continue in effect and my new employer shall be termed "Company" for all purposes hereunder and shall have the right to enforce this Agreement as my employer. In the event of any subsequent transfer, my new employer shall succeed to all rights under this Agreement so long as such employer shall be NOVUS International, Inc., or one of its Subsidiaries and so long as this Agreement has not been superseded.

### 9. Termination/No Enlargement of Employment Rights

I acknowledge my status as an employee at will and further acknowledge that, except as expressly provided in the notice provision of this Section, nothing in this Agreement shall confer any right in me to continue in the employ of the Company or shall interfere in any way with any right of the Company with regard to termination of my employment.

The Company and I shall each have the right to terminate my employment by giving at least thirty (30) days' prior written notice to the other party; provided, however, that no advance notice of termination shall be required if the business unit to which I am assigned is sold and I accept a comparable position with the purchaser of such business unit. The Company, at its option, may elect to pay me my salary for the notice period instead of continuing my active employment during that period.

### 10. Right to Recover Costs

In the event of a breach or threatened breach of this Agreement, I undertake and agree to liability for any attorneys' fees and costs incurred by the Company in enforcing its rights under this Agreement.

### 11. Exit Interview

I agree to engage, at the Company's option, in an exit interview with the Company at a time and place designated by the Company. I understand and agree that during this exit interview I may be required to confirm that I will comply with my obligations under Sections 3, 4 and 5 of this Agreement.

### 12. Rights to Photographs

I agree that the Company may, and is entitled to, use, publish and copyright photographs of me and/or the Company's property in connection with my employment, and that the Company shall have all my rights, title and interest, if any, in such photographs and negatives, including but not limited to, copyright, moral right and right to publicity. The Company may use such photographs and negatives for any advertising, publishing or other legitimate business purposes without any further compensation to me.

13. *Nonwaiver of Rights*

    The Company's failure to enforce at any time any of the provisions of this Agreement or to require at any time performance of any provisions herein shall in no way be construed to be a waiver of such provisions or to affect either the validity of this Agreement, or any part hereof, or the right of the Company thereafter to enforce each and every provision in accordance with the terms of this Agreement.

14. *Choice of Law and Forum*

    In light of the Company's contacts with the State of Missouri and its significant interest in ensuring that disputes as to the validity and enforceability of this Agreement are resolved on a uniform basis, this Agreement shall be construed under the laws of the State of Missouri and any litigation arising hereunder shall be filed and prosecuted in the State of Missouri.

15. *No Conflicting Agreement or Obligation*

    I represent that I have no agreement with or obligations to others in conflict with any of the terms of this Agreement.

16. *Entire Agreement; Modification*

    Subject to the provisions of the letter agreement that sets forth financial and other terms of my employment and is incorporated herein by reference, this Agreement sets forth the entire understanding between the parties covering the subject matter hereof and supersedes all previous agreements. No terms or provisions hereof may be changed, modified, terminated or discharged, in whole or in part' except by a writing that is dated and signed by both parties.

17. *Agreement to Arbitrate*

    In the event there is any dispute or controversy arising under this Agreement or out of my employment or termination of my employment with the Company, which the parties are unable to resolve through direct discussion or mediation, including, but not limited to, statutory claims for unlawful discrimination and/or harassment, the Company and I agree to submit all such disputes to the American Arbitration Association for final and binding arbitration. The arbitration proceedings shall be governed by the rules and procedures of the American Arbitration Association which are in effect at the time of submission of the dispute. The only disputes which are not covered by this agreement to arbitrate are: (I) claims for worker's compensation benefits; (2) claims for benefits under a benefit plan which provides its own arbitration procedure; and (3) any claim by the Company for damages and injunctive and other equitable relief for violation of sections 3, 4 or 5 of this Agreement, for related common law claims arising out the same conduct, or for the recovery of the Company's property, as to which claims the Company may seek and obtain relief from a court of competent jurisdiction. A request for arbitration must be submitted in writing to the Company Law Department within one (1) year of the date when the dispute first arose. Any failure to timely request arbitration shall constitute a waiver of all rights to raise any claims in any forum arising out of any dispute that was subject to arbitration. The limitations period set forth in this paragraph shall not be subject to tolling, equitable or otherwise.

PLEASE NOTE: BY SIGNING THIS AGREEMENT, EMPLOYEE IS HEREBY CERTIFYING THAT EMPLOYEE (A) RECEIVED A COPY OF THIS AGREEMENT FOR REVIEW AND STUDY BEFORE EXECUTING IT; (B) READ THIS AGREEMENT CAREFULLY BEFORE SIGNING IT; (C) HAD SUFFICIENT OPPORTUNITY BEFORE SIGNING THE AGREEMENT TO ASK QUESTIONS EMPLOYEE HAD ABOUT THE AGREEMENT AND/OR TO CONSULT LEGAL COUNSEL; AND (D) UNDERSTANDS EMPLOYEE'S OBLIGATIONS UNDER THE AGREEMENT.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement, as of the 21 day of October 20 06 at St. Louis, Missouri.

THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES.

EMPLOYEE

By: *(signature)*

Printed Name: Tim Evans

NOVUS INTERNATIONAL, INC.

By: *(signature)*
Sabrena Hamilton
Title: Head of Global Human Resources